MORGAN, LEWIS & BOCKIUS LLP
Eric Meckley, Bar No. 168181
Sarah Zenewicz, Bar No. 258068
One Market
Spear Street Tower
San Francisco, CA  94105-1596
Tel:    +1.415.442.1000
Fax:    +1.415.442.1001
eric.meckley@morganlewis.com
sarah.zenewicz@morganlewis.com

MORGAN, LEWIS & BOCKIUS LLP
Michelle L. Quach, Bar No. 335098
1400 Page Mill Road
Palo Alto, CA 94304
Tel:    +1.650.843.4000
Fax:    +1.650.843.4001
michelle.quach@morganlewis.com

Attorneys for Defendant
ARAMARK SERVICES, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE BAYLON and CHRISTIAN GUTIERREZ, individuals, on behalf of themselves, all others similarly situated, and the general public,<br><br>Plaintiffs,<br><br>vs.<br><br>ARAMARK SERVICES, INC. and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.<br><br>**DEFENDANT ARAMARK SERVICES, INC.'S NOTICE OF REMOVAL**<br><br>[28 U.S.C. §§ 1332, 1441,1446, and 1453]<br><br>[Los Angeles County Superior Court Case No. 23STCV04307] |

Case No.                                               DEFENDANT'S NOTICE OF REMOVAL

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** Defendant Aramark Services, Inc. ("Defendant") hereby removes the above-entitled action from the Superior Court of the State of California, County of Los Angeles, to the United States District Court for the Central District of California, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, because diversity of citizenship jurisdiction exists and the amount in controversy exceeds $5 million.  Removal to this Court is also proper under 28 U.S.C. §1332 because Plaintiff Jose Baylon's individual claims place more than $75,000 in controversy, the action involves citizens of different states, and no properly joined defendant is a citizen of California.

**I.      PROCEDURAL BACKGROUND**

1.      On February 27, 2023, Plaintiffs Jose Baylon and Christian Gutierrez ("Plaintiffs") filed a putative class action complaint in the Superior Court of the State of California, County of Los Angeles, entitled *Jose Baylon and Christian Gutierrez, individuals, on behalf of themselves, all others similarly situated, and the general public v. Aramark Services, Inc. and Does 1 through 100, inclusive,* Case No. 23STCV04307 (the "Complaint").

2.      On May 9, 2023, Plaintiffs served copies of the Summons, Complaint, Civil Case Cover Sheet and Addendum, Voluntary Efficient Litigation Stipulation Package, First Amended General Order, Notice of Case Assignment, the Court's Minute Order designating the action as complex, Initial Status Conference Order, and the Alternative Dispute Resolution Information Package on the registered agent for Defendant.  A true and correct copy of the Complaint is attached as **Exhibit A** and the other case-initiating documents Plaintiffs' counsel served on Defendant is attached as **Exhibit B.**  These documents are incorporated by reference.

3.      In their Complaint, Plaintiffs seek to represent the following putative

class of persons employed by Defendant in California: "All of Defendants' hourly paid employees who have worked for Defendants in the State of California during the Relevant Time Period (i.e., four (4) years prior to the filing of the case plus such additional time as may be permitted due to mandatory tolling of the statutes of limitations pursuant to the California Rules of Court) herein up to the date the court determines this case is properly certified as a class action." (the "Class"). (Compl. ¶15). Plaintiff also seeks to represent a subclass of terminated employees: "All Class members whose employment with Defendants terminated within three (3) years and 178 days proceeding the filing of this action," (the "Subclass"). (Compl. ¶16).

4.      Plaintiff alleges eight causes of action for: (1) Failure to Pay Wages; (2) Failure to Provide Meal Periods; (3) Failure to Pay Reporting Time Pay; (4) Failure to Furnish Accurate Itemized Wage Statements; (5) Failure to Indemnify Expenses ; (6) Violation of Labor Code section 203; (7) Wrongful Termination in Violation of Public Policy (on behalf of Plaintiff Jose Baylon); and (8) Unfair Business Practices. (Compl. ¶¶ 22-67).

5.      On May 25, 2023, Defendant filed a Notice of Appearance and on May 26, 2023, the Parties filed their Joint Stipulation to Continue the Initial Status Conference with the Los Angeles County Superior Court. A true and correct copy of Defendant's Notice of Appearance is attached as **Exhibit C** and the Parties' Joint Stipulation to Continue the Initial Status Conference along with the [Proposed] Order are attached as **Exhibit D**. These documents are incorporated by reference.

6.      On May 31, 2023, the Los Angeles County Superior Court continued the initial status conference to July 7, 2023. A true and correct copy of the Los Angeles County Superior Court order continuing the initial status conference is attached as **Exhibit E** and is incorporated by reference.

7.      Exhibit A through E constitute all the pleadings, process, and orders served upon or filed by Defendant in the Superior Court action.

## II.   REMOVAL IS TIMELY

8.     Plaintiffs served the Complaint on Defendant on May 9, 2023. Because this Notice of Removal is filed within thirty days of service of the Complaint, it is timely under 28 U.S.C. §§ 1446(b)(3) and 1453.  *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999).

9.     No previous Notice of Removal has been filed or made with this Court for the relief sought herein.

## III.   THIS COURT HAS ORIGINAL SUBJECT MATTER JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

10.     Plaintiff brings this action on behalf of the putative Class.[1]  (Compl. ¶ 1).  Removal based upon Class Action Fairness Act ("CAFA") diversity jurisdiction is proper pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453 because: (i) diversity of citizenship exists between at least one putative class member and Defendant; (ii) the aggregate number of putative class members in all proposed classes is 100 or greater; and (iii) the amount placed in controversy by the Complaint exceeds, in the aggregate, $5 million, exclusive of interest and costs.  28 U.S.C. §§ 1332(d)(2) & (d)(5)(B), 1453.  Although Defendant denies Plaintiffs' factual allegations and denies that Plaintiffs or the putative classes they purport to represent are entitled to the relief requested, based on Plaintiffs' allegations in the Complaint and prayer for relief, all requirements for jurisdiction under CAFA have been met in this case.

### A.   Diversity of Citizenship Exists.

11.     To satisfy CAFA's diversity requirement, a party seeking removal need only show that minimal diversity exists, that is, one putative class member is a citizen of a state different from any defendant.  28 U.S.C. § 1332(d)(2); *United*

---

[1] Defendant denies and reserves the right to contest at the appropriate time that this action can proceed as a class action.  Defendant further denies Plaintiffs' claims and denies that they can recover any penalties.  Defendant contends that Plaintiffs have pled an overly broad and inappropriate class definition, but Defendant premises its Removal based upon the "four corners" of the Complaint as pled.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

*Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.,* 602 F.3d 1087, 1090-91 (9th Cir. 2010) (finding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)). As explained below, Plaintiffs are citizens of California and Defendant is a citizen of Delaware and Pennsylvania.

### 1.    Plaintiffs are Citizens of California.

12.    "An individual is a citizen of the state in which he is domiciled . . . ." *Boon v. Allstate Ins. Co.,* 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002) (citing *Kanter v. Warner-Lambert Co.,* 265 F.3d 853, 857 (9th Cir. 2001)). For purposes of diversity of citizenship jurisdiction, citizenship is determined by the individual's domicile at the time that the lawsuit is filed. *Armstrong v. Church of Scientology Int'l,* 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss,* 797 F.2d 747, 750 (9th Cir. 1986)). Evidence of continuing residence creates a presumption of domicile. *Washington v. Hovensa LLC,* 652 F.3d 340, 395 (3d Cir. 2011); *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519 (10th Cir. 1994).

13.    In their Complaint, Plaintiffs allege that they "are now and at all relevant times mentioned in [the] Complaint were residents and domiciliaries of the State of California'"" (Compl. ¶ 4). Therefore, Plaintiffs are domiciled in California and are citizens of California for diversity jurisdiction purposes. Moreover, Plaintiffs have brought claims on behalf of "all Defendants' hourly paid employees who have worked for Defendants in the State of California[.]" Compl. ¶ 15 (emphasis added). Thus, Plaintiffs and at least one putative class member are citizens of California for diversity jurisdiction purposes.

### 2.    Defendant is a Citizen of Delaware and Pennsylvania.

14.    "[A] corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). 28 U.S.C. § 1332(c)(1). A corporation's "principal place of

business" is where its "officers direct, control, and coordinate the corporation's activities . . . [I]n practice it should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center,' and not simply an office where the corporation holds its board meetings[.]" *See Hertz Corp. v. Friend*, 559 U.S. 77, 92-93, 130 S.Ct. 1181, 1192 (2010). Aramark is a corporation formed under Delaware law. (Request for Judicial Notice ("RJN,") Exhs. 1, 2; Golembo Decl., ¶ 2). Its principal place of business and corporate headquarters is in Philadelphia, Pennsylvania, where its officers direct, control, and coordinate corporate activities. *Id*. Thus, Defendant is a citizen of Delaware and Pennsylvania. 28 U.S.C. § 1332(c)(1).

### B.   The Putative Class Has More Than 100 Members.

15.   22.   CAFA's requirement that proposed class membership be no less than 100 (28 U.S.C. § 1332(d)(5)) is satisfied here because the putative class has more than 100 members. Plaintiffs allege that they "estimate that membership in the Class exceeds 100." Compl. ¶ 17. Plaintiffs seek to represent all current and former non-exempt employees of Defendant since September 2, 2018. (Compl. ¶ 15). The Class includes more than 3,600 persons. (Tucker Decl., ¶ 3).

### C.   The Amount In Controversy Exceeds Five Million Dollars.

16.   Pursuant to CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds $5 million exclusive of interest and costs. 28 U.S.C. § 1332(d)(6).

17.   A removing party need only show that it is more likely than not that the amount in controversy exceeds $5 million. *See Singer v. State Farm Mut. Auto Ins. Co.,* 116 F.3d 373, 376 (9th Cir. 1997).

18.   Defendant's burden to establish the amount in controversy is the preponderance of the evidence standard. *Dart Cherokee Basin Operating Co., LLC v. Owens,* 135 S. Ct. 547 (2014); *see also Jordan v. Nationstar Mortg., LLC,* 781

F.3d 1178, 1183 (9th Cir. 2015) (citing *Dart Cherokee* for the proposition that there is no anti-removal presumption against CAFA cases).  A removing party seeking to invoke CAFA jurisdiction "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart Cherokee,* 135 S. Ct. at 554.  It is beyond dispute that "a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of the jurisdictional elements."  *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) (internal citations omitted); *see also Dart Cherokee*, 574 U.S. at 84 (holding that a "statement 'short and plain' need not contain evidentiary submissions"); *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022) (reversing district court's order remanding the action to state court due to an "inappropriate demand of certitude from [the defendant] over its assumptions used in calculating the amount in controversy" for purposes of CAFA removal).

19.    A removing defendant is "not required to comb through its records to identify and calculate the exact frequency of violations."  *Oda, et al. v. Gucci America, Inc., et al.,* 2015 WL 93335, at *5 (C.D. Cal. Jan 7, 2015); *see Sanchez v. Russell Sigler, Inc.,* 2015 WL 12765359, at *2 (C.D. Cal. April 28, 2015) ("[A] removing defendant is not obligated to research, state, and prove the plaintiff's claims for damages." (citation omitted).  The burden to establish the jurisdictional amount under CAFA "is not 'daunting,' as courts recognize that under this standard, a removing defendant is not obligated to 'research, state and prove the plaintiff's claims for damages.'"  *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008); *LaCross v. KnightTransp. Inc.,* 775 F.3d 1200, 1203 (9th Cir. 2015) (rejecting plaintiff's argument for remand based on the contention that the class may not be able to prove all amounts claimed: "Plaintiffs are conflating the amount in controversy with the amount of damages ultimately recoverable."); *Ibarra v. Manheim Invs., Inc.,* 775 F.3d 1193, 1198 n. 1 (9th Cir. 2015) (in alleging the amount in controversy, defendants "are not stipulating to

damages suffered, but only estimating the damages in controversy"). The ultimate inquiry is what amount is put in controversy by the plaintiff's complaint, not what a defendant may actually owe. *LaCross,* 775 F.3d at 1202 (internal citation omitted) (explaining that courts are directed "to first look to the complaint in determining the amount in controversy.").

20. Under *Dart Cherokee,* a removing defendant is not required to submit evidence in support of its removal allegations. *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) ("a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of jurisdictional elements.") (internal quotations omitted). The allegations in the removing defendant's notice of removal "may rely on 'a chain of reasoning that includes assumptions' and 'an assumption may be reasonable if it is founded on the allegations of the complaint.'" *Marano v. Liberty Mut. Grp., Inc.*, 2021 WL 129930, at *2 (C.D. Cal. Jan. 14, 2021) (quoting *Arias*, 936 F.3d at 925 (9th Cir. 2019)). Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5 million either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief or declaratory relief)." Senate Judiciary Report, S. REP. 109-14, at 42. As the United States Supreme Court has advised, "no antiremoval presumption attends cases invoking CAFA" because Congress intended to "facilitate adjudication of certain class actions in federal court." *Dart Cherokee*, 574 U.S. at 87. When the complaint is "lacking in factual detail," a defendant seeking removal is particularly "justified in employing reasonable estimates" to establish the amount in controversy. *Ritenour v. Carrington Mortg. Servs., LLC*, 228 F. Supp. 3d 1025, 1029 (C.D. Cal. 2017).

21. Although Defendant denies Plaintiffs' factual allegations and denies that they or the putative classes that they seek to represent are entitled to any relief, Plaintiffs' allegations and prayer for relief have "more likely than not" put into

controversy an amount that exceeds the $5 million threshold when aggregating claims of the putative class member as set forth in 28 U.S.C. § 1332(d)(6).[2]  Based on the allegations in the Complaint, Plaintiffs have put more than $5 million in controversy as set forth below, and therefore CAFA removal is appropriate.

### 1. Plaintiffs' Cause of Action for Failure to Provide Meal Periods Places At Least $2,909,216.00 in Controversy.

22.   Plaintiffs seek to recover meal period premiums for the Class based on their allegations that they and the Class did not receive compliant meal periods: "Defendants *routinely* failed to timely provide members of the Class with code-complaint meal periods, notwithstanding the fact that said Class members had not waived their right to the same.  This is to say that Defendants failed to provide meal periods in conformity with the requirements established by Cal. Lab. Code §§ 226.7, 512 and 516 and Section 11 of the IWC Wage Order(s)."  (Compl. ¶ 31) (emphasis added).

23.   Labor Code section 512(a) states that non-exempt employees must be provided an uninterrupted meal period of not less than 30 minutes for a work period of more than five hours.  Labor Code section 226.7(b) states that if an employer fails to provide an employee a meal period in accordance with state law, the employer shall pay the employee one additional hour of pay for each workday that the meal period is not provided.

24.   Plaintiffs allege that the failure to pay meal period premiums

---

[2] This Notice of Removal discusses the alleged nature and amount of damages placed in controversy by Plaintiffs' Complaint.  Defendant's reference to specific damage amounts are provided solely for the purposes of establishing that the amount in controversy is more likely than not in excess of the jurisdictional minimum.  Defendant maintains that each of Plaintiffs' claims are without merit and that Defendant is not liable to Plaintiffs and that Plaintiffs and the class suffered no damages.  No statement or reference contained herein shall constitute an admission of liability or a suggestion that Plaintiffs will or actually could recover any damages based upon the allegations contained in the Complaint or otherwise.  "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [Defendant's] liability."  *Lewis v. Verizon Communs., Inc.,* 627 F.3d 395, 400 (9th Cir. 2010).

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

Case No.           9           DEFENDANT'S NOTICE OF REMOVAL

constitutes unfair competition within the meaning of the UCL (Compl. ¶ 61) and therefore the applicable statute of limitations for this claim is four years.  Bus. & Prof. Code § 17208.

25.     Based on Defendant's records, there are more than 3,600 members of the putative Class, and they have worked more than 158,800 workweeks during the relevant period, and their average hourly rate of pay is $18.32.  (Tucker Decl., ¶ 3). Defendant's conservative calculation of the amount in controversy for Plaintiffs' meal period claim is **$2,909,216.00** (158,800 workweeks x $18.32 meal period premium).  The computation is based on the conservative assumption of a violation rate of <u>only one</u> missed meal period per workweek for the Class.  One violation per workweek is generally accepted as a reasonable and conservative assumption when calculating the amount in controversy for CAFA purposes and where, as here, a plaintiff has alleged that a defendant "routinely" fails to provide meal periods. (Compl. ¶¶ 10, 31); *see Arias v. Residence Inn by Marriott*, 936 F.3d 920, 924 (9th Cir. 2019) (finding that where complaint alleged that defendants "routinely" failed to provide meal periods, an assumption of one meal break violation per week is "plausible and may prove to be reasonable in light of the allegations in the complaint"); *Espinosa v. Genesis Healthcare, Inc.*, 2020 WL 10641865, at *3 (C.D. Cal. Mar. 31, 2020) (accepting an assumed violation rate of two missed meal breaks per week based on allegations that "class members 'routinely' missed or had non-compliant meal breaks"); *Mendoza v. Savage Servs. Corp.*, 2019 WL 1260629, at *2 (C.D. Cal. Mar. 19, 2019) ("When a defendant's calculation lacks factual support, courts in this district routinely apply a 20% violation rate—that is, one missed meal and rest period per work week—for meal and rest period premiums.").

### 2.     Plaintiff's Waiting Time Penalty Claim Places At Least $9,365,848.00 in Controversy

26.     Plaintiffs seeks to recover waiting time penalties for the Subclass. (Exh. A, Compl. ¶¶ 50-52).  Plaintiffs allege that Defendant willfully failed to

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

Case No.                                    10                    DEFENDANT'S NOTICE OF REMOVAL

timely pay final wages to them and the Subclass.  Specifically, Plaintiffs allege, "Defendants, in violation of Lab. Code § 203, willfully failed to timely pay all wages due and owing not just to Plaintiff but also to similarly situated class members at the time of termination of their employment, including minimum wages for time worked off the clock as well as premium overtime pay and meal period pay computed at the correct regular rate."  (Compl. ¶ 51).

27.    Section 203 penalties "accrue not only on the days that the employee might have worked, but also on nonworkdays," for up to 30 days, and the accrual of these penalties "has nothing to do with the number of days an employee works during the month."  *Mamika v. Barca,* 68 Cal. App. 4th 487, 492-93 (1998).  As the "targeted wrong" addressed by Section 203 is "the delay in payment" of wages, the wrong "continues so long as payment is not made"; therefore, "[a] proper reading of section 203 mandates a penalty equivalent to the employee's daily wages for each day he or she remained unpaid up to a total of 30 days."  *Id.* at 493.

28.    The statute of limitations for waiting-time penalties claims is three years. *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1395, 1398 (2010).  Plaintiff alleges a Subclass of" [a]ll Class members whose employment with Defendants terminated within three (3) years and 178 days preceding the filing of this action," based on the tolling of the statute of limitations under Emergency Rules Related to COVID-19.

29.    Based on Defendant's records, there are at least 2,165 former employees since September 2, 2019, who fall within the Subclass.  (Tucker Decl., ¶ 4).  The average pay rate for those 2,165 former employees is $18.03 per hour. (*Id.*)

30.    Defendant's conservative calculation of the amount in controversy for Plaintiffs' waiting time penalty claim is **$9,365,848.00**  (2,165 terminated class members x $18.03 average hourly rate x 8 hours per day x 30 days).  The computation of the amount in controversy is based on the allegation that each one

of the 2,165 terminated employees was owed but not paid at least some of their wages at termination and accrued 30 days of waiting time penalties based on those unpaid wages.  This is a reasonable assumption given Plaintiffs' allegation that Defendant owes penalties because of Defendant's alleged "unlawful practices" and "violations of law aris[ing] out of Defendant's common course of conduct" and that it has an "unlawful pattern and practice of" "wage and hour violations."  (Compl. ¶¶ 10, 19, 61).  It is reasonable to calculate the amount in controversy for waiting time penalties based on a 30-day penalty calculated at each former employee's daily wage rate.  *See Ford v. CEC Entm't, Inc.*, 2014 WL 3377990, at *3 (N.D. Cal. July 10, 2014) ("Assuming a 100% violation rate is thus reasonably grounded in the complaint . . . [b]ecause no averment in the complaint supports an inference that these sums were ever paid."); *Quintana v. Claire's Stores, Inc.*, 2013 WL 1736671, at *6 (N.D. Cal. Apr. 22, 2013) (finding defendants' waiting time penalties calculation was "supported by Plaintiffs' allegations" and was "a reasonable estimate of the potential value of the claims" where the complaint alleged that the defendants "'regularly required'" putative class members to work off-the-clock without compensation, and the defendants estimated that each putative class member "potentially suffered at least one violation that continues to be unpaid"); *Stevenson v. Dollar Tree Stores, Inc.*, 2011 WL 4928753, at *4 (E.D. Cal. Oct. 17, 2011) (finding it reasonable for the defendant to assume, in light of the allegations in the complaint that members of the putative class "'routinely'" missed meal periods, that "all members of the proposed class . . . would have missed a meal period as described in the complaint at least once and were thus entitled to the waiting time penalty").

### 3. Plaintiff's Request for Attorneys' Fees Increases The Amount In Controversy By At Least $1,000,000.

31.     Plaintiff seeks to recover attorneys' fees.  (Compl. ¶¶ 27, 38, 46, 49, Prayer for Relief ¶¶ 2, 4-6, 9).  Future attorneys' fees are properly included in

determining the amount in controversy, including for class actions seeking fees under Labor Code Section 226. *See Fritsch v. Swift Transportation Co. of Arizona, LLC,* 899 F.3d 785, 793-794 (9th Cir. 2018) ("Because the law entitles [the plaintiff] to an award of attorneys' fees if he is successful, such future attorneys' fees are at stake in the litigation, and must be included in the amount in controversy."). The Ninth Circuit held that future fee estimates can be based on "customary rates and proper fees," and that "a percentage-based method," such as 25% of the amount in controversy, may also be relevant when estimating the amount of fees included in the amount in controversy. *Id.* at 795 and 796, fn. 6.

32. Using 25% of the amount in controversy for unpaid meal period premiums as a benchmark for attorneys' fees equates to approximately $3,068,766.00 in fees (25% of $12,275,064.00). Measured against this benchmark, it is reasonable to assume there are at least $1,000,000.00 in attorneys' fees in controversy, which is further confirmed by crosschecking that amount against Plaintiffs' counsel's claimed hourly rates in similar matters and the minimum hours it would take to litigate a wage and hour class action through trial.

33. Plaintiffs' counsel has represented that his hourly rate is $750 in connection with a class action settlement. *See Martinez v. Anning-Johnson Co.*, No. CV 14-6325-GHK (EX), 2016 WL 11759920, at *2 (C.D. Cal. Aug. 3, 2016) (noting that counsel for Plaintiff "bills at $750 per hour"); RJN, Exh. 3 at ¶ 8 (Declaration of Class Counsel, Paul T. Cullen, In Support of Plaintiffs' Motion for Attorneys' Fees, Costs and Incentive Awards, dated December 28, 2018, stating that his hourly rate is $750).

34. Based on a $7570 per hour rate, Plaintiffs' counsel would need to work only 1,334 billable hours to reach **$1,000,000** in attorneys' fees in this action. Litigating a wage and hour class action through class certification and trial would easily require more than 1,334 hours of work. *Ridgeway v. Wal-Mart Stores Inc.,* 269 F. Supp. 3d 975, 1003 (N.D. Cal. 2017) (granting a total of $15,200,002.90 in

attorneys' fees based on a total of 10,595.8 hours at rates ranging from $300 to $900 per hours following a 16-day class action trial); *Ibarra v. Wells Fargo Bank, N.A.,* 2018 WL 5276295, at *7 (C.D. Cal. Sept. 28, 2018) (awarded $1,967,253.76 in attorneys' fees to the plaintiffs following summary judgment in their favor where class counsel had spent 1,805.55 hours litigating at rates ranging from $325 to $775); *In re Taco Bell Wage and Hour Actions,* 222 F. Supp. 3d 813, 847 (E.D. Cal. 2016) (awarding $1,156,821.12 in fees following trial based on 4,016.74 hours billed and a blended rate of only $288 per hour). As such, Defendant's assumption that at least $1,000,000 in attorneys' fees has been placed in controversy by this wage and hour class action is reasonable.

**4.  Summary of the Amount Placed In Controversy**

35.  As described above, a reasonable and conservative estimate of the amount placed in controversy by Plaintiffs' causes of action for meal period violations and waiting time penalties exceeds $5,000,000.

| Cause of Action | Amount in Controversy |
|---|---|
| Meal Period Violations | $2,909,216.00 |
| Waiting Time Penalties | $9,365,848.00 |
| Attorneys' Fees | $1,000,000.00 |
| **Total** | **$13,275,064.00** |

36.  Defendant has demonstrated by a preponderance of the evidence that the amount placed in controversy by Plaintiff's causes of action exceeds the $5,000,000 jurisdictional threshold of 28 U.S.C. § 1332(d).

**5.  Plaintiffs' First Cause of Action for Failure to Pay Wages, Third Cause of Action for Failure to Pay Reporting time Pay, Fourth Cause of Action for Failure to Furnish Accurate Itemized Wage Statements, Fifth Cause of Action for Failure to Indemnify Expenses Put Additional Amounts in Controversy, Further Exceeding the CAFA Threshold.**

37.  As shown above, using reasonable assumptions grounded in the Complaint's specific allegations to calculate the amount in controversy, Defendant

has demonstrated that Plaintiffs' meal and period and waiting time penalties claims, as well as their request for attorneys' fees, place more than $13 million in controversy. However, in addition to this amount, Plaintiffs allege causes of action for unpaid minimum and overtime wages, reporting time pay, wage statement penalties and for unreimbursed expenses. Each of these causes of action places additional amounts in controversy beyond the causes of action that Defendant calculated above.

**D.     CAFA's Exceptions to Removal Do Not Apply.**

38.     CAFA's "home-state" and "local controversy" exceptions do not apply to this removal.

39.     The "home state" exception prevents CAFA removal only when all "primary defendants" are citizens of the state in which the action was filed. 28 U.S.C. § 1332(d)(4)(B); *Phillips v. Kaiser Found. Health Plan, Inc.*, 953 F. Supp. 2d 1078, 1086 (N.D. Cal. 2011) ("[Home state] test requires that all 'primary defendants' be residents of the same state in which the action is filed."). Defendant is not a citizen of California, the state where this action was originally filed, and so the home state exception to CAFA removal does not apply.

40.     The "local controversy" exception to CAFA jurisdiction also does not apply because during the three-year period prior to the filing of this class action, at least one "class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons . . . ." *See* 28 U.S.C. § 1332(d)(4)(A); *see also Chalian v. CVS Pharmacy, Inc.*, 2017 WL 1377589, at *3 (C.D. Cal. Apr. 11, 2017) (holding that the local controversy exception did not apply where similar class action lawsuits had been filed against defendants in the past three years). Courts have interpreted the language of 28 U.S.C. § 1332(d)(4)(A))(ii) broadly in order to narrowly apply the exception. *See, e.g., Laddi v. Soraya Motor Co.*, 2017 WL 7053651, at *3 (W.D. Wash., May 5, 2017) (explaining that the definition of "same or similar" class

action should "be interpreted liberally" and that two prior class actions filed in California disqualified the local controversy exception); *Jadeja v. Redflex Traffic Sys, Inc.*, 2010 WL 4916413, at *2–3 (N.D. Cal., Nov. 22, 2010) (Plaintiff's contention that the prior class action filed outside California was dissimilar failed because "the plain language of the statute" focused on whether the factual allegations against the defendant were similar.).

41.     During the three-year period prior to the filing of this action, at least two similar wage and hour class action lawsuits have been filed against Defendant, negating application of the home state exception. *See Tiara Billups-Larkin v. Aramark Services, Inc.*, Case No. 3:21-cv-06852-RS (N.D. Cal. June 6, 2021); *Kelly v. Aramark Services, Inc.*, Case No. 3:22-cv-01272-AMO.

**IV.   THIS COURT HAS ORIGINAL SUBJECT MATTER JURISDICTION UNDER THE RULE FOR TRADITIONAL DIVERSITY JURISDICTION**

42.     The Complaint also satisfies traditional diversity jurisdiction because "the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between . . . citizens of different States." *See* 28 U.S.C. §§ 1332(a)-(a)(1).

**A.     Complete Diversity of Citizenship Exists Between the Parties.**

43.     Plaintiffs are citizens of California and Defendant is a citizen of Delaware and Pennsylvania. Section III.A, *supra*. Pursuant to 28 U.S.C. § 1441(b)(1), the citizenship of defendants sued under fictitious names does not affect the diversity analysis. Thus, the inclusion of "Doe" defendants in the Complaint has no effect on removability. *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1998); 28 U.S.C. § 1441(a) (stating that for purposes of removal, the citizenship of Defendant sued under fictitious names shall be disregarded). Complete diversity exists. 28 U.S.C. §§ 1332(a)-(a)(1).

**B.     The $75,000 Amount in Controversy Requirement is Satisfied.**

44.     All recoverable damages, including penalties and attorneys' fees,

count toward the amount in controversy. *See Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 347-48 (1977) (superseded by statute on other grounds); *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001); *Galt G/S/ v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998).

45. Plaintiff Jose Baylon ("Baylon") alleges in the Complaint that Aramark wrongfully terminated in violation of public policy. Compl. ¶¶ 53-50. Baylon seeks to recover several categories of damages including "compensary damages, loss of earning [sic], general and special damages, mental pain and anguish, and emotional distress[.]" Compl., Prayer for Relief ¶ 8(a).

### 1. Plaintiff's Request for Lost Wages Places $85,527 In Controversy.

46. Aramark employed Baylon from April 15, 2018, to February 17, 2021. (Tucker Decl., ¶ 5). Over the course of his employment, Aramark paid Baylon an average of approximately 32.5 hours per week. (*Id.*). At the time of his termination, Plaintiff was paid at a rate of $15.30 per hour. Plaintiff's weekly pay was at least $497.25 (i.e., $15.30 x 32.5 hours).

47. Approximately 120 weeks passed between Plaintiff's February 2021 termination and the date of this removal. As a result, Plaintiff's Complaint places $59,670 in controversy for alleged back wages (i.e., 120 weeks x $497.25 minimum weekly hourly wages).

48. Plaintiff also seeks front pay. "Because Plaintiff 'claims at the time of removal that her termination caused her to lose future wages, . . . then there is no question that future wages are 'at stake' in the litigation, whatever the likelihood that she will actually recover them.'" *Molina v. Target Corp.*, 2018 WL 3935347, at *3 (C.D. Cal. Aug. 14, 2018) (quoting *Chavez v. JPMorgan Chase & Co.,* 888 F.3d 413, 417 (9th Cir. 2018)). "[C]ourts have often found that one year from the date of removal is a 'conservative estimate of the trial date' in employment cases." *Reyes v. Staples Off. Superstore, LLC*, 2019 WL 4187847, at *3 (C.D. Cal. Sept. 3,

2019) (citing *Fisher v. HNTB Corp.*, 2018 WL 6323077, at \*5 (C.D. Cal. Dec. 3, 2018)).  Assuming this case goes to trial within a year from removal, Plaintiff's claim for front pay places an additional $25,857 in controversy (i.e., 52 weeks x $497.25 minimum weekly hourly wages).

49.    Thus, Plaintiff's claim for lost wages places **$85,527** in controversy, exclusive of any amounts for lost benefits.

**2.    Plaintiff's Request for Emotional Distress Damages Places More Than $75,000 In Controversy.**

50.    In wrongful termination, juries in California and elsewhere have returned verdicts with substantial awards for non-compensatory damages that far exceed $75,000.  *See EEOC v. Harris Farms, Inc.*, Docket No. 02-CV-06199-AW1-LJ0 (E.D. Cal. Jan. 24, 2005) (jury verdict included damages for $53,000 in past earnings, $91,000 in futures earnings, and $350,000 in emotional distress damages); *Astor v. Rent-A-Center*, Docket No: 03AS048644 (Sacramento Cty. Superior Court Aug. 5, 2005) (jury verdict included $369,000 in economic damages and $250,000 in noneconomic damages); *Pansacola v. Malaysia Airlines*, Docket No.: CV045944 (C.D. Cal. Feb 6, 2006) (jury verdict of $237,537, of which $160,000 was for punitive damages).  Prevailing plaintiffs in employment lawsuits regularly receive more than $75,000 for emotional distress damages alone.  *See, e.g., Keifer v. Bechtel Corp.*, 65 Cal. App. 4th 893, 895 (1998) (upholding jury award in excess of $75,000.00 for emotional distress damages in age discrimination and wrongful termination case); *Ward v. Cadbury Schweppes Bottling Grp.*, 2011 WL 7447633 (C.D. Cal. Dec. 11, 2011) (awarding a total of $7,550,000 in compensatory damages for emotional distress and physical injuries to six plaintiffs in age discrimination and wrongful termination case); *Welch v. Ivy Hill Corp.*, No. BC414667, 2011 WL 3293268 (Los Angeles Sup. Ct. Mar. 8, 2011) (awarding $1,270,000 in pain and suffering to employee in age discrimination action).

51.    "Emotional distress awards in California for wrongful termination in

violation of public policy … can be large relative to the underlying economic damages." *Simpson v. Off. Depot, Inc.*, 2010 WL 11597950, at *3 (C.D. Cal. June 21, 2010). For instance, in *Campbell v. Nat'l Passenger R.R. Corp.*, 2010 WL 625362, at *1 (N.D. Cal. Feb. 18, 2010), the Court awarded $120,000 in non-economic damages in a wrongful termination and discrimination case. *See also Piutau v. Fed. Express Corp.*, 2003 WL 1936125 (N.D. Cal. Apr. 32, 2003) (awarding non-economic damages of $35,000, or 201% of the $17,381.55 in economic damages awarded for wrongful suspension); *Francies v. Kapla*, 127 Cal. App. 4th 1381 (2005) (finding that wrongfully terminated plaintiff suffered $425,000 in non-economic damages, 607% of his $70,000 in economic damages). Here, approximating Baylon's non-economic damages at 200% of his economic damages places **$171,054** in emotional distress damages in controversy (i.e., 200% of $85,527).

52. Based on a conservative estimate of the value of the alleged emotional distress damages in this action, the amount in controversy for Baylon's emotional distress claim itself exceeds $75,000, exclusive of interest and costs. *See, e.g., Silverman v. Stuart F. Cooper Inc.,* No. BC467464, 2013 WL 5820140 (Los Angeles Sup. Ct. July 19, 2013) (awarding $151,333 for emotional distress damages in age discrimination and wrongful termination case); *Aboulafia v. GACN Inc.,* No BC469940, 2013 WL 8115991 (Los Angeles Sup. Ct. Dec. 17, 2013) (pain and suffering awards of at least $250,000 to each of four employees in age discrimination and wrongful termination action).

53. In sum, based on a conservative estimate, Plaintiff's wrongful termination claim places at least $75,000 in controversy.

V.   **VENUE**

54. This action was originally filed in the California Superior Court for the County of Los Angeles. Venue is proper in this district, pursuant to 28 U.S.C. § 1441(a), because it embraces the county in which the removed action was pending.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

Case No. _____        19        DEFENDANT'S NOTICE OF REMOVAL

## VI.   **NOTICE**

55.   Defendant will promptly serve Plaintiffs with this Notice of Removal and will promptly file a copy of this Notice of Removal with the clerk of the state court in which the action is pending, as required under 28 U.S.C. § 1446(d).

## VII.   **CONCLUSION**

56.   Based on the foregoing, Defendant respectfully requests that this action be removed to this Court.  If any question arises as to the propriety of the removal of this action, Defendant respectfully requests the opportunity to present a brief and oral argument in support of its position that this case is subject to removal.

Dated:          June 8, 2023                    MORGAN, LEWIS & BOCKIUS LLP


By:            */s/ Eric Meckley*
                    Eric Meckley
                    Sarah Zenewicz
                    Michelle L. Quach
                    Attorneys for Defendant
                    ARAMARK SERVICES, INC.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

Case No.                                    20                    DEFENDANT'S NOTICE OF REMOVAL